WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rodney D. Moore,<br><br>        Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>        Defendants. | No. CV 19-04543-PHX-JAT (DMF)<br><br>**ORDER** |

On January 10, 2023, on remand from the Court of Appeals, the Court issued the following order:

> Plaintiff, who is confined in the Arizona State Prison Complex-Yuma ("ASPC-Yuma"), filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. In a September 19, 2019 Order, the Court concluded that Plaintiff had stated a claim against Does 1-4 in Count 1, granted Plaintiff 120 days to discover the Doe Defendants' identities and file notices of substitution, and dismissed the remaining claims and Defendants (Doc. 5). The Clerk of Court sent Plaintiff four subpoenas in blank with which to seek information concerning the Doe Defendants' identities. (*Id.*)
>
> Plaintiff submitted three subpoenas, only one of which included an address. The Court ordered that subpoena, addressed to ADC Records Officer Jackie Hutchinson, served so that Plaintiff could attempt to identify the Doe Defendants named in the Complaint and file a notice of substitution for at least one of them.[1]
>
> After resolving motions for clarification filed by Hutchinson, the Court granted Hutchinson an additional 15 days to respond to the subpoena

---

[1] The Court also directed the Clerk of Court to send Plaintiff two subpoenas in blank to be completed by Plaintiff and returned for service on Arizona Department of Corrections Director David Shinn and Warden Hernandez. Plaintiff returned the completed subpoenas on March 17, 2020. On March 27, 2020, Shinn was served and on April 20, 2020 Hernandez was served (Docs. 19, 22). It is unclear when and whether Shinn or Hernandez responded to the subpoenas, but Plaintiff has not filed a motion to enforce or otherwise indicated they failed to comply with the subpoenas.

and extended the deadline for Plaintiff to file a notice of substitution. (Doc. 23.) Neither Hutchinson, nor Plaintiff, filed anything to support whether and when Hutchinson responded to the subpoena and Plaintiff did not file a notice of substitution, a motion to enforce the subpoena, or a motion for an extension of time. On July 28, 2020, the Clerk of Court entered a judgment of dismissal (Doc. 24) after Plaintiff failed to file a notice of substitution or seek an extension of time to do so.

Plaintiff appealed. On August 25, 2022, the Ninth Circuit Court of Appeals vacated and remanded. No. 20-16504 (9th Cir. Aug. 25, 2022). In a November 30, 2022 Order, this Court vacated entry of Judgment and ordered this case reopened (Doc. 33). The Court further ordered Hutchinson to file a notice stating when and how she complied with Plaintiff's subpoena or why she should not be held in contempt for failure to timely respond to the subpoena.

Hutchinson filed a Notice of Compliance describing how she responded to Plaintiff's subpoena (Doc. 43), which requested the "names of TSU person[ne]l Officers who did a search on March 1, 2018 in 11-B run, Yuma-Cheyenne Unit." Specifically, Hutchison has provided two letters sent by the ADC's Custodian of Records, Jeff Sanders, in response to the subpoena. Both letters are dated May 6, 2020. In the first letter, Sanders states that there are no records responsive to Plaintiff's subpoena. In the second letter, Sanders confirms the lack of responsive records and further states, "On March 1, 2018, there was a riot situation at Arizona State Prison Complex Yuma, Cheyenne Unit and although there [was] TSU staff on site, they were not conducting any searches, they were there to control the riot."[2] According to a Declaration submitted in support of Hutchison's Notice, Sanders based that information on reports from Complex Security Operations staff, including the Special Operations & Tactics Coordinator and the Complex major.

Before the district court, Plaintiff does not dispute that he received the letters from Sanders. However, before the Court of Appeals, Plaintiff did dispute receiving a response to the subpoena directed to Hutchinson; specifically, Plaintiff told the Court of Appeals that "I <u>didn't</u> hear anything so I wrote the Court asking for a status update…." No. 20-16504, Doc. 4 at 4. Hutchison declined to file anything with the Court of Appeals to dispute Plaintiff's representation. No. 20-16504 at Doc. 6. This Court finds it unfortunate that Hutchison failed to file any of the information she now presents to this Court when she had the opportunity to do so at the Court of Appeals.

The district court record does not reflect that Plaintiff took any further steps to identify the Doe Defendants. The Court will grant Plaintiff an additional 90 days in which to attempt to identify at least one of the Doe Defendants and to file a notice of substitution. The Clerk of Court will send Plaintiff two subpoenas[3] with which Plaintiff may attempt to identify one or more of the Doe Defendants and to file a notice of substitution.

Due to the confusion at the Court of Appeals regarding whether

---

[2] Plaintiff's underlying claim is one for the use of excessive force, not a search. It appears that Plaintiff may be able to learn the identities of TSU officers in his unit on March 1, 2018, by seeking the identities of the TSU officers who worked that day *without referring to what he believes they were doing in the unit that day.*

[3] To seek production of records or information, Plaintiff must properly complete at least one subpoena and return it to the Court. Thus, if Plaintiff wishes to subpoena records from any ADC official (including Hutchinson), he must complete a subpoena directed to that official and identify the record or information sought.

> Plaintiff's prior subpoenas were responded to, the Court will require that all subpoenas and responses be filed into the record as outlined below.
> **IT IS ORDERED**:
> (1) The Show Cause Order (Doc. 33) is **discharged**.
> (2) Plaintiff has **90 days** from the filing date of this Order in which to discover, by subpoena or otherwise, the identity of one or more of the Doe Defendants (TSU Officers), *and* to file a "notice of substitution" for one or more of the Doe Defendants.
> (3) No later than **30 days** from the filing date of this Order, Plaintiff must complete and return to the Court at least one subpoena seeking records or information concerning the identity of one or more Doe Defendant sued in Count I of the Complaint. Upon receiving any subpoena, the Clerk of the Court shall file a copy of the subpoena into the record. If the subpoena is directed to Jackie Hutchison, Ms. Hutchinson's counsel shall, within 7 days, file a notice of whether his client will waive personal service and accept service by the filing in ECF. If the subpoena is directed to anyone other than Jackie Hutchison, the Clerk of the Court shall forward the original subpoena to the U.S. Marshals for service. When Plaintiff receives a response to any subpoena, Plaintiff must immediately forward a copy of that response to this Court, which the Clerk of the Court shall file into the record. If Hutchinson responds to any future subpoenas, she must both send a copy to Plaintiff and file a copy in the record with this Court.
> (4) If Plaintiff does not complete and return to the Court at least one subpoena seeking records or information concerning the identity of one or more Doe Defendant sued in Count I of the Complaint, within **30 days** of the filing date of this Order, this action may be dismissed for failure to prosecute and failure to comply with a Court order.
> (5) The Clerk of Court must **issue** two subpoenas in blank and send them to Plaintiff.
> (6) Within **30 days** Plaintiff must file a Notice with the Court either confirming he received the two May 6, 2020, letters from Sanders or whether Plaintiff claims that Fidel Palencia's statement by email on May 6, 2020 that "Both letters have been hand delivered to inmate Moore 060443 by myself and COIII Palencia at 1720 hours" is false. (Doc. 43-4 at 3).

(Doc. 44) (footnotes in original).

As the above Order reflects, the subpoena respondents contest the version of the facts Plaintiff presented to the Court of Appeals. Nonetheless, under the Rule of Mandate, the Court began the discovery process anew to allow Plaintiff to attempt to identify the Doe Defendants in this case. (The Court notes that Plaintiff continues to dispute receiving the original responses to the subpoena prior to his appeal. (Doc. 53). As of today, however, he has certainly received them as copies of filings in this case.)

As the January 10, 2023, Order reflects, Plaintiff has been given leave to take discovery to learn the names of the Doe officers listed in the complaint. (Doc. 5). Indeed, Plaintiff's first subpoena in this case reflected this understanding as Plaintiff sought the

1  "names" of TSU Officers who conducted a search on March 1, 2018 in 11-B run, Yuma-
2  Cheyenne Unit. (Doc. 43).

3  However, post-appeal and remand, Plaintiff has chosen not to seek the "names" he was given leave to take discovery to learn. Specifically, Plaintiff's second subpoena directed to Ms. Hutchinson seeks to "view a video" of the incident. (Doc. 48). It is unclear how Plaintiff viewing such a video would have disclosed the names of the Doe officers to Plaintiff such that he could amend his complaint to include their real names. The request to view the video is Plaintiff's only request in the subpoena to Ms. Hutchinson. (Doc. 48). Perhaps Plaintiff believes he is so familiar with these officers that he will recognize them in the video; but if this were true, it would seem Plaintiff could have just recognized them on the day of the incident. The only other subpoena utilized by Plaintiff, to Jeff Sanders, also sought a copy of the video or to view the video. (Doc. 52).

13  Ms. Hutchinson and Mr. Sanders responded to the subpoenas (Doc. 54) by advising Plaintiff that the video had been disposed of based on the retention schedule. Plaintiff acknowledged his receipt of these subpoena responses on March 1, 2023. (Doc. 54). Between March 1, 2023 and May 1, 2023, Plaintiff has taken no action in this case. Plaintiff's deadline to amend his complaint to substitute real Defendant(s) in place of the Doe Defendants expired April 10, 2023. Notably, like last time, Plaintiff did not seek an extension of this deadline and did not seek another round of subpoenas after the "view the video" subpoenas produced no usable response.

21  The Court is not inclined to sua sponte allow a third round of discovery subpoenas in this case. The Court has issued numerous orders giving Plaintiff what borders on instructions for how to complete his subpoenas. (*See* Doc. 23 at 2; Doc. 5 at 5-7; Doc. 44 at 2, n. 2 ("Plaintiff's underlying claim is one for the use of excessive force, not a search. It appears that Plaintiff may be able to learn the identities of TSU officers in his unit on March 1, 2018, by seeking the identities of the TSU officers who worked that day *without referring to what he believes they were doing in the unit that day*.") (emphasis in original)). But the Court cannot give Plaintiff legal advice. *Pliler v. Ford*, 542 U.S. 225, 232 (2004)

(requiring trial judges to explain the details of federal procedure or act as the pro se litigant's counsel "would undermine district judges' role as impartial decisionmakers."). Moreover, Plaintiff was well aware he could just ask for the name as evidenced by the fact that he asked for names in his first subpoena. Plaintiff's strategic decision to not ask for the names of the officers in his second round of subpoenas is his own, and the Court will not continue this path where Plaintiff issues subpoenas that do not seem to be targeted at his purported goal of discovering the names.

Further, as indicated, for the Court to allow another round of subpoenas, the Court would have to do so sua sponte. The January 10, 2023 order was clear that: "Plaintiff has **90 days** from the filing date of this Order in which to discover, by subpoena or otherwise, the identity of one or more of the Doe Defendants (TSU Officers), *and* to file a "notice of substitution" for one or more of the Doe Defendants." (emphasis in original). Plaintiff has not complied. Nor has Plaintiff sought an extension of time. Plaintiff's failure to comply with a Court Order and failure to prosecute this case alone justify dismissal. *See* Fed. R. Civ. P. 41(b). Additionally, the reality is this Court cannot preside over a case with only unknown Doe Defendants. For the case to go forward, Plaintiff must discover the true names. And Plaintiff has, twice, failed to take the discovery necessary to achieve this goal; nor has Plaintiff requested more time to do so.

Alternatively, as stated above, Federal Rule of Civil 41(b) justifies dismissal. *See Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) (in dismissing for failure to prosecute or failure to comply with a court order, the district court should consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions."). All factors except the public policy in favor of resolution of cases on their merits favor dismissal.

Specifically, this case was filed in 2019 involving an incident that occurred on March 1, 2018. Thus, it has been over 5 years since the incident occurred. Clearly dismissal is warranted under the public interest in expeditious resolution. The Court's need

1  to manage its docket also favors dismissal.  To date the Court has issued 15 Orders (not
2  counting this one) totaling 97 pages in part to aid Plaintiff in discovering the identities of
3  the Doe Defendants, yet at this point the Court is still at square one in that process.  In other
4  words, Plaintiff is no closer today to discovering the names of the Doe Defendants than he
5  was the day this case was filed.  Thus, the Court's need to manage its docket efficiently
6  favors dismissal.  The risk of prejudice to the as-yet-unidentified Doe Defendants is also
7  great.  Obviously, over 5 years later, the Defendants' memories of the incident will not be
8  as sharp as if they had been timely served.  Additionally, the video of the incident, which
9  may have been beneficial to Defendants, has apparently been destroyed under a record
10 retention policy due to the amount of time that has passed.  Thus, the risk of prejudice to
11 the Defendants also favors dismissal.

12       Regarding the availability of less drastic sanctions, certainly the Court could allow
13 a third round of subpoenas.  But Plaintiff, who has proven himself to be very capable of
14 filings things with the Court, and to date has submitted 14 separate filings in this case (not
15 including his filings with the Court of Appeals), has chosen not to ask for the relief of
16 additional time or additional subpoenas.  There is no less drastic sanction than a third round
17 of subpoenas because, as indicated above, it is impossible for the Court to move forward
18 in this case without real defendants.  Because the Court of Appeals has already tried this
19 second round of subpoenas process, and because this Court basically advised Plaintiff what
20 to write in the subpoena and he declined to do so (Doc. 44 n. 2), the Court has no reason to
21 believe a third round of subpoenas would be successful.  Thus, the Court finds no less
22 drastic sanction than dismissal would bring this case to resolution.  Nonetheless, the Court
23 will dismiss without prejudice.

24       For all these reasons,
25       / / /
26       / / /
27       / / /
28       / / /

**IT IS ORDERED** that this case is dismissed, without prejudice, and the Clerk of the Court shall enter judgment accordingly.

Dated this 1st day of May, 2023.

James A. Teilborg
Senior United States District Judge